REL:  February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

—————————————————

### CL-2022-0725

—————————————————

### Robin Fipps

v.

### Kimbellee B. Fipps

### Appeal from Jefferson Circuit Court
### (DR-15-900129.03)

MOORE, Judge.

Robin Fipps ("the father") appeals from a final judgment entered by the Jefferson Circuit Court ("the trial court") involuntarily dismissing his claims against Kimbellee B. Fipps ("the mother") and granting the relief requested in her counterclaim against the father.  We reverse the judgment and remand the case with instructions.

## Background and Procedural History

On July 1, 2019, the father, through attorney Scott Harwell filed a complaint in the trial court seeking to modify the child-support provisions of a 2015 judgment divorcing the parties ("the divorce judgment") and a petition for a rule nisi alleging that the mother had contemptuously violated the provisions of the divorce judgment by preventing telephone communication between the father and the parties' children.

On February 26, 2020, counsel for the mother filed a notice of appearance and a motion to disqualify Harwell. The motion alleged that Harwell had represented the mother in a 2003 divorce action, during which, she said, he had acquired private and confidential information regarding the parties' oldest child. Harwell had attempted to represent the father in the parties' 2015 divorce action but, on February 5, 2015, the trial court entered an order disqualifying Harwell from representing the father. The father moved to set aside the disqualification order, but the trial court denied that motion on April 1, 2015. On June 11, 2015, the trial court entered the divorce judgment. On October 14, 2015, the

mother commenced a contempt action, and Harwell filed a notice of appearance for the father, prompting the mother to file a second motion for disqualification, which the trial court granted on December 27, 2015. On May 2, 2017, Harwell commenced a civil action on behalf of the father against the mother that was settled before the trial court could rule on a third motion to disqualify Harwell that was filed by the mother on February 26, 2018.

The father filed numerous responses to the motion to disqualify Harwell in the underlying action in which he asserted that there had never been a conflict of interest sufficient to disqualify Harwell from acting as his attorney and that, if any conflict existed, the mother had waived any conflict of interest by acceding to Harwell's representation of the father in the mediation of the 2017 civil action and in a subsequent action to modify the divorce judgment commenced in 2018. On April 8, 2020, after conducting oral arguments on the motion, the trial court entered an order disqualifying Harwell from representing the father in the underlying action. On April 27, 2020, the mother filed an answer, denying the material allegations in the complaint. On May 19, 2020, the

father filed a petition for the writ of mandamus seeking an order from this court vacating the April 8, 2020, disqualification order. This court issued an opinion denying that petition on August 7, 2020, see Ex parte Fipps, 317 So. 3d 999 (Ala. Civ. App. 2020), and issued a certificate of judgment in that case on August 26, 2020. See Rule 41, Ala. R. App. P.

On October 25, 2020, the trial court entered an order requesting that the parties submit a status report regarding the case. On October 29, 2020, Candace Peeples filed a notice of appearance as counsel for the father. On November 6, 2020, the parties filed a joint status report indicating that the case had been "on hold" since May 19, 2020, the date that the father had filed his petition for the writ of mandamus. The parties requested three or four months to complete discovery and to attempt to settle the case.

The record does not contain any further filings until September 7, 2021, when the trial court entered an order setting a trial date of December 16, 2021. On September 9, 2021, the father filed an amended complaint, clarifying that he was seeking a retroactive modification of his child-support obligation and a reduction of his life-insurance obligation

4

to $100,000 in coverage and adding a claim of contempt against the mother for allegedly violating the divorce judgment by claiming the children as dependents on her income-tax returns. On November 15, 2021, the mother filed an answer to the amended complaint and a counterclaim seeking a modification of the divorce judgment and asserting a petition for a rule nisi alleging that the father owed a child-support arrearage. The father moved to dismiss the counterclaim on November 18, 2021, because it was filed within 42 days before the first setting of the case for trial in violation of Rule 13(a) and 15(a), Ala. R. Civ. P.

On December 2, 2021, the father, in compliance with a local COVID-19 protocol, notified the trial court of the persons that he was expecting to attend the trial on his behalf. On that same date, the father also notified the trial court that he had served a witness and exhibit list on counsel for the mother, in compliance with the September 7, 2021, pretrial order. On December 9, 2021, after the mother had also filed a notice of compliance with the local COVID-19 protocol and a witness and exhibit list, the mother filed a motion to continue the trial due to her

contraction of the COVID-19 virus. The trial court granted the motion to continue and rescheduled the trial to March 15, 2022. The notice of the new-trial setting was served on counsel for the father. Based on the rescheduling of the trial, the father withdrew his motion to dismiss the counterclaim filed by the mother. On January 28, 2022, the father filed a second amended complaint to add a claim to amend the visitation provisions of the divorce judgment.

On February 17, 2022, Peeples filed a motion to withdraw as counsel for the father, which the trial court granted on that same date. On March 15, 2022, the trial court called the case for trial. The father did not appear. The mother testified, but the record does not contain a transcript of her testimony. On March 16, 2022, the trial court entered a final judgment. In the final judgment, the trial court dismissed, with prejudice, all the pleadings filed by the father and granted the relief requested in the mother's counterclaim. Specifically, the trial court amended the divorce judgment to grant the mother final authority over the medical and dental welfare of the parties' children, to require the mother to cover the children on her health insurance, and to award the

mother the right to claim the children as dependents on her income-tax return. The trial court further found the father to be in civil contempt for failing to pay the mother $58,682 in child support between November 2019 and February 2022 and awarded the mother $5,397.91 in interest on that arrearage. The trial court also awarded the mother $8,000 in attorney's fees. The trial court ordered that the father could purge himself of the contempt by paying the mother $72,079.91 within 30 days.

On the same date as the entry of the final judgment, the father filed, pro se, a handwritten motion to alter, amend, or vacate the final judgment in which he stated that he had calendared the trial date as March 16, 2022, and apologized for failing to appear on March 15, 2022. On March 29, 2022, Amanda Rucks Duncan and Jessica Kirk Drennan filed a notice of appearance as counsel for the father and, on April 14, 2022, they filed on behalf of the father a verified motion to set aside the final judgment and a motion for a new trial. In the verified motion, the father stated that, after Peeples had withdrawn from the case on February 17, 2022, he had been actively seeking replacement counsel; that he had made a good faith error in marking March 16, 2022, as the

7

trial date on his calendar; that he had intended to appear at the trial as scheduled; that he had, in fact, appeared for trial on March 16, 2022, at which time he learned that he had missed the trial date by one day; that he had immediately filed his pro se postjudgment motion; and that he had retained Duncan and Drennan to represent him. The father argued that he had not willfully or contumaciously defied the order of the trial court to appear on March 15, 2022, for trial and that his failure to appear had not been deliberate or dilatory in nature so as to warrant the harsh sanction of involuntary dismissal. The father further maintained that equity could not be served without the trial court hearing his testimony. On April 14, 2022, the father also filed a motion to stay the final judgment. On April 28, 2022, the trial court, without conducting a hearing, denied the motion to set aside the final judgment, the motion for a new trial, and the motion to stay. On June 7, 2022, the father filed a timely notice of appeal to this court.

## Issue

In the final judgment, the trial court made two separate determinations. First, the trial court dismissed the claims of the father

due to his failure to appear for trial despite having received notice. Second, the trial court granted the relief requested by the mother in her counterclaim based on uncontested testimony given by the mother.

The dismissal with prejudice was an involuntary dismissal for failure to prosecute as described in Rule 41(b), Ala. R. Civ. P., which provides, in pertinent part: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." This court has recognized that the failure of a plaintiff to appear for trial equates to a failure of the plaintiff to prosecute. See, e.g., Poore v. Poore, 285 So. 3d 852, 855 (Ala. Civ. App. 2019). Although the text of Rule 41(b) appears to require that a defendant move for dismissal, "the rule has been construed to permit a trial court to dismiss an action sua sponte for lack of prosecution … based on the trial court's inherent power to control its own docket. Riddlesprigger v. Ervin, 519 So. 2d 486, 487 (Ala. 1987)." Young v. Southeast Alabama Med. Ctr., 148 So. 3d 429, 430 n.1 (Ala. Civ. App. 2013).

In his first postjudgment motion, the father moved, pursuant to Rule 59, Ala. R. Civ. P., to alter, amend, or vacate the final judgment based on his calendaring error. In his verified postjudgment motion, which amended the first postjudgment motion, see Kulakowski v. Cowart, 220 So. 3d 304, 313 (Ala. Civ. App. 2016) (holding that a party may validly amend a postjudgment motion within 30 days of the entry of the final judgment), the father set forth the legal basis for his relief under Rule 59. The father specifically argued that "the dismissal with prejudice of [the father's] claims under these circumstances is too harsh of a sanction" and that his mere calendaring error "does not rise to the level of an extreme situation warranting a dismissal with prejudice," citing Gill v. Cobern, 36 So. 3d 31 (Ala. 2009), and Progressive Insurance Co. v. Brown, 195 So. 3d 1007 (Ala. Civ. App. 2015), cases involving the involuntary dismissal of a party's claims under Rule 41(b), Ala. R. Civ. P.

The father did not specifically challenge that aspect of the final judgment granting the relief requested in the mother's counterclaim. The father did cite Bates v. Bates, 194 So. 3d 976, 978-79 (Ala. Civ. App. 2015), in his appellate brief, arguing that under Bates "there is a

10

particularly strong bias in domestic relations [cases] towards allowing a party to present evidence in court prior to the entry of a judgment," and the father did request that the final judgment be set aside and a new trial be ordered so that the case could be decided on its merits, but, arguably, in context, the father requested only a trial on his claims that had been dismissed. The father did not request a hearing on the postjudgment motions, so there is no record expounding on the scope of the postjudgment motions.

On appeal, the father again generally asserts that the final judgment should be set aside in its entirety and a new trial ordered, but his legal argument concentrates solely on the alleged incorrectness of the dismissal of his claims against the mother. The father cites only cases discussing and applying the standards for entering an order dismissing an action under Rule 41(b) and denying a motion to set aside such an order. The father makes no legal argument as to why that part of the judgment granting the mother's counterclaim should be reversed. See Rule 28(a)(10), Ala. R. App. P. (requiring that an argument contain "the contentions of the appellant/petitioner with respect to the issues

11

presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on"). Even if the postjudgment motions could be deemed to have preserved the issue whether the trial court had erred in failing to set aside the part of the final judgment granting the mother's counterclaim, the father has waived that argument on appeal by failing to comply with Rule 28(a)(10). See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008). Thus, we conclude that the only issue on appeal is whether the trial court erred in dismissing the father's claims under Rule 41(b) and in refusing to set aside that part of the final judgment, and we do not further address the propriety of that part of the final judgment granting the relief requested by the mother in her counterclaim.

## Standard of Review

We review the trial court's judgment involuntarily dismissing the father's claims for his failure to appear at the trial and its order denying the postjudgment motions to set aside that dismissal and to grant a new trial for an abuse of discretion. Poore, supra. The law strongly favors disposition of cases, particularly domestic-relations cases, on the merits

and that interest may be overcome and an involuntary dismissal affirmed only when, upon carefully scrutinizing the case, this court determines that there is a clear record of delay, willful default, or contumacious conduct. Id.

Analysis

When dismissing the claims of a plaintiff based upon a failure to appear for trial, the court must determine whether the failure was willful. Poore, 285 So. 3d at 857. A failure to appear for trial is "willful" when it is undertaken consciously and intentionally as opposed to accidentally, mistakenly, or involuntarily. Id. at 856. When the failure to appear for trial or some other court proceeding has resulted from the mere inadvertence of the plaintiff or counsel in calendaring the trial date, without further evidence of dilatory or contumacious conduct on the part of the plaintiff, the appellate courts of this state have concluded that the harsh remedy of dismissal with prejudice is not warranted and have reversed the judgments dismissing the plaintiff's claims with prejudice. See Gill v. Cobern, supra; Cabaniss v. Wilson, 501 So. 2d 1177 (Ala. 1986);

<u>Progressive Ins. Co. v. Brown</u>, <u>supra</u>; <u>Musick v. Davis</u>, 80 So. 3d 846 (Ala. Civ. App. 2011).

In this case, the father alleged in his postjudgment motions that he did not appear for trial on March 15, 2002, due solely to his error of marking the trial date on his calendar as March 16, 2022, and that he had, in fact, appeared on March 16, 2022, expecting to try his case that day. <u>See generally</u> <u>Ash v. Washington</u>, 349 So. 3d 1284, 1287 (Ala. Civ. App. 2021) (considering allegations in an unverified motion concerning the reason for the failure to appear for trial when reversing a judgment of involuntary dismissal). The record shows that, upon learning that he had missed the trial date, the father immediately filed a pro se, handwritten motion to alter, amend, or vacate the judgment on March 16, 2022, apologizing to the trial court for his oversight. On its face, the allegations in the father's postjudgment motions and the actions of the father tended to show that the father had not intentionally missed the trial date in violation of the orders of the trial court or that the father was in willful default.

The mother maintains, however, that the record shows that the father had displayed a history of willful, contumacious, and dilatory conduct that could have led the trial court to properly determine that his failure to appear at trial was willful. The mother mainly points to the father's attempt to be represented by Harwell in the underlying action after Harwell had been disqualified twice. However, at the time of the filing of his initial complaint, the father had an arguable basis for believing that the mother had waived any objection to Harwell's representation of the father. Furthermore, upon receiving the complaint filed by Harwell in the underlying action, the mother did not move to strike the complaint or to dismiss the case based on Harwell's prior disqualifications; she only moved to disqualify Harwell again. See Ex parte Ramsey, 642 S.W.2d 483, 484 (Tex. Crim. App. 1982) (asserting that a pleading filed by a disqualified attorney may be stricken in appropriate situations); Slater v. Rimar, Inc., 462 Pa. 138, 150, 338 A.2d 584, 590 (1975) (indicating that a court may, in some circumstances, dismiss a complaint filed by a disqualified attorney with a conflict of interest). But see Lindquist v. Bangor Mental Health Inst., 770 A.2d 616,

15

618 (Me. 2001) (holding that complaint survives disqualification of attorney and that disqualification is not a valid basis for dismissal). The father did vigorously contest the motion to disqualify Harwell, even to the point of filing a petition for the writ of mandamus to have this court order the trial court to vacate the disqualification order entered by the trial court on April 8, 2020, see Ex parte Fipps, supra (reciting the complete history of the litigation between the parties and the disqualification of Harwell), but that contest should not have delayed the proceedings. For reasons unstated in the record, the parties put the case "on hold" after the filing of the petition for the writ of mandamus on May 19, 2020, although Rule 21(f), Ala. R. App. P., provides that "[t]he petition for a writ under this Rule shall not stay proceedings in the trial court unless the trial judge or an appellate court shall so order." At any rate, the disqualification issue resolved on August 26, 2020, when this court issued a certificate of judgment of the opinion denying the petition for the writ of mandamus.

The record does not reveal any conduct committed by the father after that date that could be characterized as willful, contumacious, or

16

dilatory. To the contrary, the father retained Peeples only four days after the trial court had inquired of the status of the case on October 25, 2020. After the trial court scheduled a trial for December 16, 2021, the father timely amended his complaint, followed the local COVID-19 protocol, and served the mother with his witness and exhibit list, all in the time leading up to the trial date, indicating that he was ready to try the case as scheduled. The trial court continued the case to March 15, 2022, based on the request of the mother, not the father.

On January 28, 2022, the father amended his complaint a second time, indicating that he was continuing to actively prosecute the case after the continuance of the trial. Peeples did withdraw on February 17, 2022, but the father did not move the trial court to continue the trial date as a result of her withdrawal. He proceeded to court on March 16, 2022, to try the case, apparently pro se. After he realized that he had missed the trial date, he retained, within 30 days of the entry of the final judgment, Duncan and Drennan to represent him to have the final judgment set aside and to appeal the final judgment after he was unsuccessful in that endeavor.

17

We conclude that the record does not contain a clear record of delay, willful default, or contumacious conduct committed by the father that would be sufficient to overcome the strong bias in favor of deciding cases like this case on the merits. We therefore reverse that part of the judgment dismissing the complaint, the amended complaint, and the second amended complaint of the father, and remand the case to the trial court with instructions to reinstate the action for the purpose of adjudicating the father's claims and to take any and all such other actions as are consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Hanson and Fridy, JJ., concur.

Edwards, J., concurs in the result, without opinion.